ROBERT T. MOONEY *et ux.* V. WILLARD MERRIAM *et al.,
as Partners, etc.*

No. 15,389.   (94 Pac. 263.)

SYLLABUS BY THE COURT.

1. FIRE-INSURANCE — *Oral Contract* — *Definiteness.* In order to
recover damages for the loss of property destroyed by fire,
on the ground of the failure to carry out the terms of an
oral contract for insurance, the evidence should show with
reasonable definiteness that the minds of the parties met upon
the subject-matter of the contract and agreed upon its terms.

2. ———— *Breach of Contract—Action against Agents—Demur-
rer to Evidence.* In an action like the one referred to in the
preceding paragraph, where the evidence leaves it uncertain
as to whether the oral contract for insurance was one which
required defendants to write the insurance in a certain com-
pany of which they were agents, or, on the other hand, left
it to the agents to determine in what company it should be
placed, and is likewise indefinite and uncertain with respect
to the subject-matter of the contract, the risk insured against,
the duration of the risk, the amount of the insurance and the
premium to be paid, no recovery can be had, and a demurrer
to the evidence should be sustained.

Error from Wyandotte district court; J. MCCABE
MOORE, judge.  Opinion filed February 8, 1908.  Af-
firmed.

*W. H. McCamish,* for plaintiffs in error.

*McAnany & Alden,* and *A. L. Berger,* for defendants
in error.

The opinion of the court was delivered by

PORTER, J.: Robert T. Mooney and wife sued to re-
cover damages for the breach of an alleged oral
agreement to write an insurance policy covering prop-
erty, consisting of a barn and certain live stock, grain
and implements therein, situated on their farm in
Wyandotte county.  The defendants, Merriam, Ellis &
Benton, are insurance agents at Kansas City, Kan.

20—77 KAN.

Plaintiffs' petition alleged that Willard Merriam had been in the insurance business for several years and that defendants succeeded to the business and were the agents of several fire-insurance companies; that in 1896, during the time Merriam conducted the business in his name, he had written a policy upon plaintiffs' barn and its contents which had expired, and that by reason of his familiarity with plaintiffs' business he understood the specific order for insurance which plaintiffs gave defendants, through him, on June 27, 1904. It then alleged the making of an oral contract on the last-mentioned date, whereby Merriam, for his firm, agreed to write a policy of insurance upon the barn and its contents. It also alleged the breach of the contract, the loss and destruction of the barn by fire, which occurred July 3, 1904, and claimed damages for the value of the personal property contained in the barn, the various items of which amounted to $573, and $1700 for the value of the barn, making a total of $2273.

The court sustained a demurrer to the evidence, which is the error complained of. Plaintiffs' evidence was, in substance, that on June 27, 1904, Mooney had a conversation with Merriam at the bank and inquired whether his barn was insured; that Merriam replied, "Come up to the office and if it is not we will fix it;" that at the office Merriam said, "If you haven't been notified you are surely insured, but we will look it up," and he called to his clerk to look it up; that while the clerk was engaged in making an examination other parties came in and attracted Merriam's attention; that Mooney, not caring to wait, told Merriam to find out whether his policy was alive or not, and if not to make it out at once and draw on him for the premium money. The answer of Merriam was, "You may go home and rest assured that if it is not right we will make it right." Mooney also testified as follows:

"Ques. Was anything said about the policy? Ans. Told him to make it out as had been the former policy;

same as they had heretofore been making—just as the former policy."

"Q. Do you recollect whether he told you what company he would put it in? A. No, sir; I do not."

To plaintiffs' petition there was attached a copy of the former policy, issued by the Home Insurance Company of New York, for $2000 on the barn and $700 on the horses, grain and farm implements contained therein. The original of this policy was offered in evidence. It was signed by Willard Merriam, as agent. It was dated December 3, 1896, and expired December 3, 1901.

We think the court properly sustained the demurrer. The evidence was very unsatisfactory as to any contract having been made, but it was particularly deficient in failing to show with reasonable certainty the terms and conditions of the alleged contract. The amount of the insurance was not fixed, no premium was agreed upon, and there was no description of the property to be insured or the separate amounts which were to cover the live stock, grain, implements and buildings. Nor was any time stated when the policy was to become in force, nor the date when it was to expire.

In order that any contract can be made it is necessary that the minds of the parties shall meet upon the main proposition. In *Whitman v. Milwaukee Fire Ins. Co.*, 128 Wis. 124, 107 N. W. 291, 5 L. R. A., n. s., 407, 116 Am. St. Rep. 25, where the action was against the company upon an oral contract to insure, the language of the agent was that he " 'would see to it, take care of it so it would be all right,' would 'get a policy.' " (Page 129.) It was held that the evidence was not sufficiently definite to show the making of a contract. In the opinion the court, following *Wood v. Prussian National Ins. Co.*, 99 Wis. 497, 75 N. W. 173, said:

"An oral contract of insurance, like any other, requires a meeting of minds as to all of the essential provisions, leaving nothing to be done but to execute

it. The evidence required to show such meeting of minds, when the nature of the contract is of such an extraordinary character as that of an oral one of insurance, must necessarily be pretty definite." (Page 130.)

Again, in *Zimmermann v. Dwelling-House Ins. Co.*, 110 Mich. 399, 68 N. W. 215, 33 L. R. A. 698, where the question involved was whether an oral contract of insurance had been made, and the action was against the company instead of the agent, it was said:

"No statement was made as to the value of the property to be insured, or for how much it was to be insured, or what rate of premium was to be paid. No date had been fixed for the commencement or termination of the risk. Giving the most liberal construction possible to the language used, and what was done, it did not constitute a mutual and valid contract, binding upon both parties." (Page 401.)

(To the same effect see *Thayer v. Middlesex Mut. Fire Ins. Co.*, 27 Mass. 325; *Kimball v. Lion Ins. Co.*, 17 Fed. 625; *Mattoon Mfg. Co. v. Oshkosh Mutual Life Ins. Co.*, 69 Wis. 564, 35 N. W. 12.)

There was no evidence from which a jury would have been justified in finding that there was an agreement that Merriam was to select the company with which the insurance should be placed. In fact Mooney testified that he did not recollect whether Merriam told him in what company he would write the insurance. An attempt was made to connect the conversation with the former policy issued by the Home Insurance Company of New York, but, in our opinion, there is a failure of the evidence in this respect. The former policy had expired about two years and six months prior to the conversation. From the time it had expired plaintiffs had carried no insurance on the property, nor is there any evidence that during this period there were any business relations existing between plaintiffs and Merriam or the defendants. When the former policy was issued Merriam, who was the agent, was in business alone, and the other defendants who

are sued had no connection with the transaction. According to the evidence the defendants are not brokers in insurance, but agents representing certain insurance companies. The law will not permit them to represent both the insurance company and the insured in the same transaction. Plaintiffs concede this to be the law, and make the claim, as alleged in their petition, that the agreement was that Merriam was to use his own discretion and place the insurance with any company he might select. There is no evidence in the record of any agreement of this kind at the time it is claimed the contract sued upon was made, unless we are for some reason compelled to draw the inference that such was the understanding of the parties. This, we think, leaves entirely too much to inference instead of evidence. Mooney's own testimony is: "Told him to make it out as had been the former policy; same as they had heretofore been making—just as the former policy." Literally, this would seem to mean a policy issued by the Home Insurance Company of New York which was "just as the former policy."

Counsel for plaintiffs concede that the law is well settled that one who agrees as agent of a certain insurance company to write a policy acts for the company, and may make his principal liable for his neglect or failure, but does not become liable himself. The reason for the rule is, as above stated, that if he acts as agent of the company he cannot act as agent of the assured in the same transaction. (*Ramspeck v. Pattillo,* 104 Ga. 772, 30 S. E. 962, 42 L. R. A. 197, 69 Am. St. Rep. 197.)

The Kentucky court of appeals refused, in *Continental Ins. Co. v. Jenkins,* 5 Ins. L. J. 514, to enforce an oral contract for insurance which was uncertain in its terms and rested wholly upon the recollections of the parties. In the opinion it was said:

"It is certainly true that oral contracts for insurance may be enforced; but a specific and complete agreement ought to be established by a clear preponderance

of the evidence, before the courts should hold the insurers bound." (Page 516.)

And the court in the opinion observed that while less strictness of proof may be tolerated where the alleged agreement was to renew a former policy, because very frequently such agreements are made orally, yet original agreements for insurance, which are not usually made without some formality and generally are in writing, should be proved by more satisfactory evidence. (To the same effect see *Strohn and another v. The Hartford Fire Insurance Company*, 37 Wis. 625, 39 Am. Rep. 777.)

We think the evidence in this case was too indefinite and uncertain with reference to the subject-matter of the policy, the risk insured against, the duration of the risk, the amount of the insurance, and the premium to be paid. It left wholly to conjecture the question whether defendants were to place the policy in a certain company of which they were agents or whether they were to exercise their own discretion as to where it should be placed.

There are other questions argued, to which we deem it unnecessary to refer, as the reasons we have mentioned compel an affirmance of the judgment, and it is so ordered.