No. 25,586.

F. L. PLOTNER, *Appellee*, v. NATIONAL FIRE INSURANCE COMPANY, OF HARTFORD, CONNECTICUT, *Appellant*.

SYLLABUS BY THE COURT.

1. FIRE INSURANCE—*Acts Constituting Cancellation—Form.* When a fire insurance policy provides that the insurer may cancel it upon five days' notice, the form of the notice is not material, but it is important that it be in such form that the insured is given definitely to understand that the policy is canceled.

2. SAME—*Proof of Cancellation.* In the payment of a partial loss on a fire insurance policy, the draft contained a statement, "and said policy is hereby canceled and surrendered." This draft was indorsed by the insured. The evidence was controverted as to whether the insured's attention was specifically called to that wording of the draft. *Held,* a finding of the trial court that the policy was not canceled will not be disturbed.

3. SAME—*Avoidance for Misrepresentation—Title to Property.* In an application for a fire insurance policy the insured represented that he was the sole owner of the real property upon which were the insured buildings, and at the time of a partial loss a similar statement was made in the proof of loss. The insured was in fact the owner of an undivided three-fourths of the property, a minor child owning the other one-fourth, which the insured was negotiating to buy and which he did buy soon thereafter by proper proceedings in probate court, and at the time of the loss in this case was the sole owner of the property. There was no indication that the insured was endeavoring to take unfair advantage by reason of the inaccurate statement of ownership in the application and first proof of loss. *Held,* that the inaccurate statements did not constitute such fraud to the injury of the insurance company as to render the policy void.

Appeal from Wilson district court; SHELBY C. BROWN, judge. Opinion filed April 11, 1925. Affirmed.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt,* and *V. V. Scholes,* all of Topeka, for the appellant.

*J. L. Stryker,* and *D. J. Sheedy,* both of Fredonia, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action on a fire insurance policy. It was tried to the court, who made findings of fact and conclusions of law and rendered judgment for plaintiff. The defendant has appealed.

On February 21, 1920, plaintiff made written application to defendant through its soliciting agent, C. N. Converse, for $2,000 insurance on his house and $1,000 on his barn, situated on certain

described farm land, and the policy was duly issued. It contained a mortgage clause in favor of Wilder S. Metcalf, mortgagee. On May 11, 1920, the house was destroyed by fire. The plaintiff made proof of loss and the defendant paid the sum by draft reading as follows:

"D 676

WESTERN DEPARTMENT

NATIONAL FIRE INSURANCE CO.

Claim No. 4272              OF HARTFORD CONN.              Draft No. 18858

CHICAGO, ILL., June 16th, 1920.

*Upon acceptance of this draft* at sight *as per margin,* The First National Bank of Chicago, Ill., will pay to the order of F. L. Plotner and Wilder S. Metcalf

$2000.00                              Two Thousand and $^{no}/_{100}$............Dollars, which payment, as evidenced by proper endorsement hereon, is to be accepted in full satisfaction of all claims and demands for loss and damage of May 11th, 1920, under policy 200051 issued at Altoona, Kans., Agency and said policy is hereby *cancelled in said amount.* cancelled and surrendered.

(Signed)   F. E. HEALD, *Loss Supt."*

[The words in italics were deleted.]

On May 14, 1921, the barn was struck by lightning and burned and plaintiff notified defendant through its resident agent. Defendant denied liability, claiming to have canceled the policy at the time of paying the loss on the residence. Hence this action was brought for the loss on the barn.

The petition contained the usual allegations for such an action and had a copy of the policy attached. The answer averred that the policy contained the following clause:

"This policy shall be canceled at any time at the request of the insured, in which case the company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be canceled at any time by the company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the *pro rata* premium for the expired time, which excess, if not tendered, shall be refunded on demand and surrender of this policy."

And that upon payment for the loss of the house it notified plaintiff, both in writing by the draft above set out, and orally through its agent, C. N. Converse, that the policy was canceled, and by reason thereof the policy became canceled June 23, 1920, five days after the delivery of the draft.

As a further defense it is averred that the policy contained the following clause:

"And if any false statements are made in said application, or otherwise, that shall deceive the company to its injury; . . . or in case any change shall take place in title or interest or possession (except by succession by reason of the death of the insured) of the property herein named; or if the insured shall not be the sole and unconditional owner in fee of said property; . . . then in each and every one of the above cases this policy shall be null and void."

The application stated in effect that the insured was the owner in fee under a general warranty deed of the real property upon which the buildings were situated. The proof of loss for the house contained this statement: "The property insured on which loss is claimed belonged at the time of said loss exclusively to F. L. Plotner, whose title to the real estate is fee simple," and it was averred that these statements in the application and proof of loss were false in that the insured was not the sole owner in fee of the property, but, on the contrary, was the owner of an undivided three-fourths thereof. "Said false statements and each of them deceived this defendant to its injury."

Defendant further averred that by reason of the false statements above mentioned it was induced to make the payment of $2,000 for the loss of the house, and by cross petition sought to recover that sum. The reply put in issue the several defenses. At the conclusion of the evidence the court made findings of fact as follows:

"First: That the defendant, the National Fire Insurance Company, is and at all of the times mentioned in the petition herein was, a corporation as alleged in said petition and duly authorized to transact the business of fire insurance in the state of Kansas.

"Second: On the 21st day of February, 1920, Charles N. Converse, of Altoona, Kansas, was the duly authorized agent of defendant to receive applications for insurance on the buildings referred to in plaintiff's petition. The said Charles N. Converse was said duly authorized agent at the time of the issuance of the policy sued on herein, and was such agent at the time of the loss of the residence on said premises and at the time of the loss of said barn on said premises, and was such agent at all the times mentioned in said petition.

"Third: On the 21st day of February, 1920, the plaintiff, F. L. Plotner, made application to the defendant company, through and by their agent, Charles N. Converse, for a policy of insurance on his one and one-half story shingle roof frame building, and also on barn and sheds situated on the northwest quarter of section twenty-seven, township thirty, range seventeen, Wilson county, Kansas. On the said 21st day of February, 1920, pursuant to said

application so made, the said defendant issued policy No. 200051 on the buildings above referred to, in consideration of the sum of sixty-four dollars and fifty cents, for which a note for said sum was executed and delivered to said company by the plaintiff and was afterwards duly paid.

"Fourth: The said policy above referred to provided for insurance for loss by fire and lightning on said dwelling house in the sum of two thousand dollars and on said barn in the sum of one thousand dollars.

"Fifth: On the 11th day of May, 1920, the dwelling house described in said policy was destroyed by fire, and said loss was paid by the defendant to the plaintiff in full on the 16th day of June, 1920, by draft No. 18858 on the First National Bank of Chicago, Illinois. Said draft had written by typewriter and printing the following words: 'And said policy is hereby canceled and surrendered.' It also had upon its face the following words, 'Canceled in said amount,' stricken out. The last-mentioned words, 'And said policy is hereby canceled and surrendered,' and the words 'Canceled in said amount' stricken out constitute all the written notice ever given to the plaintiff pertaining to the cancellation of said policy. The plaintiff and Wilder S. Metcalf, who had a mortgage clause in said policy, cashed said draft and received the money thereon.

"Sixth: Some time during the month of May, 1921, the barn described in said policy was struck by lightning and burned, the same being a total loss.

"Seventh: Soon after the destruction of said barn the plaintiff notified the said Charles N. Converse, agent for the defendant company, of the loss of said barn, by telephone and also in writing, whereupon the said agent notified the defendant company of said loss. Afterwards said agent notified the plaintiff that the company owed him nothing; that the policy had been canceled.

"Eighth: In the conversation between the plaintiff and the agent, Charles N. Converse, just before the application was filled out the plaintiff stated to the said agent that he was the owner of the premises, but that there was an heir with whom he would have to settle. Notwithstanding this statement, the said agent of the company filled out said application in his own handwriting, stating therein that the plaintiff was the owner of said premises, which application was duly signed by the plaintiff, and upon said application and statements made therein, said policy of insurance heretofore referred to was issued to the plaintiff by the defendant company. In connection with the above as to whether or not the plaintiff made a statement to the said agent in regard to there being an heir, Mr. Converse, the agent, on cross-examination testified as follows:

"'Q. And did he tell you in that conversation that his wife had passed away? A. Yes, sir.

"'Q. Did he tell you that there were other heirs interested in the property? A. No, sir.

"'Q. Did he tell you the wife left a child? A. He told me they had one child; I supposed it was his as well as hers at that time.

"'Q. You supposed it? A. At that time it wasn't material to me.'

"Ninth: At the time of the making of said application by said plaintiff and when the said policy was issued by the defendant, the heir referred to in finding No. 8 owned a one-fourth interest in said property.

"Tenth: At the time of the loss of said barn by fire the plaintiff was the owner in fee simple of the entire premises, and said barn was not covered by any other insurance.

"Eleventh: The plaintiff at all times retained the possession of the policy and continues to retain the same.

"Twelfth: The defendant company never returned any unearned premium upon said policy to the said plaintiff, F. L. Plotner, nor ever offered to return any of said premium, and the said plaintiff never made any demand upon the defendant company for return of premium prior to the destruction of the barn upon said premises on May 14, 1921."

And the following conclusions of law:

"First: The defendant cannot recover on his cross petition herein.

"Second: The policy sued on here was in full force and effect at the time the barn was destroyed by fire and plaintiff should recover in the sum prayed for in his petition."

Appellant first contends that the policy was canceled because of the wording of the draft used in paying the loss upon the house. We find few cases bearing upon this particular form of notice of cancellation. This was before the court in *Grant Lumber Co. v. North River Ins. Co.*, 253 Fed, 83, where a similar statement of cancellation was in the draft and in a receipt signed by the insured at the time the draft was delivered. The court held this insufficient to effect a cancellation, and in the opinion said:

"It is also thought that defendant failed to give the requisite notice. Granted that no particular form of notice is required, still it must be shown either that the insured has actual knowledge of the insurer's intention to cancel, or that such intention has been so expressed as to give notice to the ordinary man in the exercise of ordinary care. As already stated, the plaintiff did not have actual knowledge, and under the circumstances it cannot be charged with carelessness in failing to take notice. The carelessness was upon the part of the defendant in employing means better suited to conceal than to reveal its intent. It would have been a very simple thing for it to give a plain, unequivocal, direct notice of its desire to cancel. It had a form of 'draft' and a 'receipt,' and presumably it had a form of notice. Instead of giving such notice, what did it do? It first agreed with the plaintiff upon the amount of the loss, and, it is to be presumed, directly or indirectly promised to make settlement accordingly. So far as appears, there was no suggestion or intimation that it intended to cancel the policy. In due time it caused its agent to transmit, not a notice, but a draft and a receipt, inclosed with a letter expressly notifying the plaintiff of the cancellation of another policy, but with no suggestion of a purpose to cancel the policy in suit. With this letter before him impliedly representing that but one policy was to be canceled, the plaintiff's manager turned to the formal papers, upon which the defendant now relies as constituting notice or contract. Upon its face he saw that one of the papers was labeled 'draft,' and generally it had

that appearance. It was for the correct amount, appropriately referred to the loss, and named the plaintiff as payee. It is submitted that in the ordinary transaction of business not once in a hundred times does the ordinary business man carefully read a check or draft in full. It is sufficient that it appears to be a check or draft, and that he has knowledge of the amount and the names of the payee and maker." (p. 88.)

Appellant attempts to distinguish this case from the one before us on the ground that in the cited case there was no direct evidence that the wording of the draft or receipt was called to the attention of the insured, while here the local agent testified that he did call the insured's attention to it, though that was controverted by the insured.

In *Lutge v. Dubuque Fire, etc., Ins. Co.*, 40 Cal. App. 658, there was a small fire on the premises insured and the company settled the claim therefor by paying $18. Later there was a total loss of the premises. The defendant claimed that upon making the payment of the $18 loss, the policy was canceled by attaching to the draft sent to plaintiff a receipt which contained the statement, just above where plaintiff placed his signature, "Said policy is hereby surrendered for cancellation," and that the insured by signing the receipt consented to the cancellation of the policy. In that case there was evidence of the insurance broker that he specifically called plaintiff's attention to the fact that the insurance policy was canceled and that the plaintiff replied that he did not care. This was denied by the insured. The lower court found in favor of the insured, and upon appeal it was held that there was sufficient evidence to sustain the finding of the court.

The method of attempting to cancel the policy in this case has the obvious aspect of an endeavor to cancel the policy without the insured being aware of it. The plaintiff in this case had sustained a loss of his house insured for $2,000. The draft was payable to him and to the mortgagee, was to the amount of $2,000, which was then due insured, and specifically recited to be "in full satisfaction of all claims and demands for loss and damage of May 11, 1920," which was the day the house burned. This was not an instrument delivered to plaintiff for him to retain or to retain a copy of it, but it was one which he was simply to indorse and turn over to the mortgagee, which he did. Before a cancellation appearing in that kind of an instrument should be held effective, it should be made clear that the insured's attention was called to it and that he knew and understood his policy was being canceled. The burden of establishing that

is of course upon the party claiming cancellation, and upon this point the evidence was controverted, and the findings and conclusion of the trial court thereon will not be disturbed.

Appellant contends that the policy should be held void and that it should recover the $2,000 paid for the loss of the house, because of the false statement in the application for the policy and the proof of loss, to the effect that the insured was the sole owner in fee of the property, when in fact he was the owner of only an undivided three-fourths interest therein, which false statements deceived appellant to its injury. The evidence discloses that the condition of the title came about in this manner: When the land was purchased, about two years before the policy of insurance was written, the title was taken in the name of the insured and his wife. They had one child, a minor. The wife died intestate, which left the ownership three-fourths in the insured and one-fourth in the minor. A guardian was appointed for the minor, and by proper proceedings in probate court the interest of the minor was sold to the insured. This was consummated in July, 1920. The insured testified that when the agent of defendant solicited him for insurance he was asked something about the property and told the agent in substance that he owned the property, but there was a child he would have to settle with, and the agent replied that he would fix that all right. The agent's testimony disclosed that he did not regard the child's interest as of any importance under the circumstances. The agent did fix it in writing up the application by stating the insured to be the sole owner, and either the same or another agent of the defendant wrote a similar statement in the proof of loss. Of course, the amount of that loss had to go to the mortgagee in any event. While defendant contends the statements were false, there is no real indication of fraudulent intent. It is not contended that the properties were over-insured, nor is it intimated that the insured was responsible in any manner for the loss in either instance. Hence, if defendant were deceived at all, which may well be doubted, it seems clear it was not deceived to its injury.

Provisions of the kind under consideration are intended to protect insurance companies from paying losses to those who have in fact not sustained them, who really have nothing at hazard, and whose interest therefore is that the event insured against should happen. (Note L. R. A. 1918 E, 375. See, also, *Hankins v. Insurance Co.*, 96 Kan. 706, 153 Pac. 491.) In *Eisman v. Fire Insurance Co.*, 115

Akers v. Farmers Alliance Ins. Co.

Kan. 80, 221 Pac. 1116, the building owned by the insured was upon leased ground. The policy contained a clause that it should be void "if the subject of insurance be a building on ground not owned by the insured in fee simple." There was evidence that the insured told the soliciting agent of the insurance company that he did not own the ground on which the house stood and the agent replied that was all right. A loss occurred and the insurance company was held liable. (See, also, *Insurance Co. v. Davis*, 6 Kan. App. 268.) We conclude that the policy was not void for the reason urged.

The judgment of the court below is affirmed.