No. 26,064.

THE UNION GAS AND FUEL CORPORATION, *Appellee*, v. THE TETON SYNDICATE, *Appellant* (C. S. SHIPPEY and R. S. BEATTY, as Partners, etc., Intervenors, *Appellees*).

### SYLLABUS BY THE COURT.

1. MINES AND MINERALS—*Oil Drilling Contract—Rejection or Acceptance of Well—Satisfaction.* The evidence is held to support a finding that the defendant, an oil company, which had agreed to pay the cost of drilling a well if it should be satisfied it was a paying oil producer, had become satisfied of that fact and accepted the well, and had later undertaken to reject it on the pretext of a lack of such satisfaction, but really because of the well being ruined by water as a result of work incidental to its underreaming.

2. SAME—*Evidence of Assumed Ownership—Payment of Costs.* In the situation stated in the preceding paragraph, it is held that a recovery against the defendant is not prevented, on the theory that the title to the well could not pass without a payment by it, by the language of the contract that if satisfied the well was a paying oil producer it would pay the cost and thereby assume ownership.

3. SAME—*Oil-drilling Contract—Defenses to Abandonment.* In the situation stated in the first of the foregoing paragraphs, where the defendant is found to have wrongfully refused to pay for the well, it is not entitled to dam-

---

1. Mines and Mining, 27 Cyc. p. 727.   2. Id., 27 Cyc. p. 727.

ages for the refusal of the plaintiff to drill other wells provided for in the contract.

Appeal from Allen district court; ROBERT E. CULLISON, judge. Opinion filed July 11, 1925. Affirmed.

*Charles H. Apt, Frederick G. Apt,* both of Iola, and *William M. Matthews,* of Kansas City, Mo., for the appellant.

*Thomas E. Wagstaff, J. W. Scovel, Donald W. Stewart,* all of Independence, *J. W. Finley, J. H. Allen* and *B. M. Dunham,* all of Chanute, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Teton Syndicate owned three oil and gas leases. It assigned the gas rights in these leases to the Union Gas and Fuel Corporation, which assumed certain obligations with respect to the drilling of wells. One provision of the contract was that if any well drilled by the gas company should discover oil, the syndicate should satisfy itself whether it was a paying oil producer, and if so satisfied should pay the gas company within twenty days the cost of drilling and equipment and thereby become the owner of the well. The gas company drilled a well which it claims met these conditions and was accepted by the syndicate. It brought this action to require payment of about $2,000 under the contract. It recovered judgment and the defendant appeals. Shippey & Beatty, who drilled the well and did some work on it afterwards, intervened, setting up a claim for their later services. It was agreed they should have judgment against the defendant if the plaintiff prevailed, and otherwise against the plaintiff.

The language of the contract with respect to the matter in controversy is:

"If any wells drilled for gas on the aforesaid leases by the party of the second part [the gas company] should discover oil, party of the first part [the syndicate] shall satisfy itself as to whether it is a paying oil producer, and if so satisfied agrees to pay to party of the second part, within twenty days thereafter, the actual cost of the drilling and all equipment furnished in the said well by the party of the second part, and thereby assume ownership of the said well.

"It is further agreed that in case the first party should drill a well for oil on any of the above-described leases and discover gas in paying quantities, in the judgment of the second party, said second party shall pay to the first party within twenty days thereafter the actual cost of the drilling and all equipment furnished by the first party in the said well and take over the ownership of the well.

3. Mines and Mining, 27 Cyc. p. 727.

"It is further agreed that in event either party is not satisfied to take over a well drilled by the other party, that the party refusing to take over will give the other party an assignment of its interest in the oil or gas, as the case may be, in this particular well."

The defendant cites a number of cases supporting the generally accepted rule that one who has agreed to pay for an article if it is satisfactory to him is not bound to do so if he is honestly and in good faith dissatisfied with it, notwithstanding that he ought to be satisfied. (35 Cyc. 220; *Hodges v. Ferry & Co.,* 92 Kan. 21, 140 Pac. 102.) There is no controversy here concerning that proposition, the trial court having explicitly adopted it in the charge to the jury. The situation is not entirely similar, however, to that presented, where in order to be bound the purchaser must be satisfied with something the acceptability of which involves a matter of personal taste. The question here is not whether the defendant was pleased or displeased with the well as adapted to some special purpose of its own, but whether it was convinced that it was a paying oil producer. In the defendant's brief it is correctly said, "Each party was therefore the sole judge of whether or not the well, in either case, produced oil or gas in paying quantities." The defendant did not have an option to take or refuse the well. It was under a binding obligation to take it if the condition specified was met. The question involved is not what it ought to have thought about the well nor what it said about it. The plaintiff had the burden of showing by a preponderance of the evidence that the defendant was actually satisfied that it was a paying producer of oil—a somewhat easier task than proving the well to have been attractive to the defendant because of qualities appealing to its personal and peculiar taste.

The defendant's principal contention is that there was no evidence to support a finding that it was satisfied the well was a paying oil producer or that it accepted the well. Of this the district court said in a written opinion overruling a motion for a new trial:

"Now, of course, satisfaction need not be proven by the showing of express statements to that effect, but it may be proven by the acts and conduct of the parties. A witness testified that upon the defendant's representative viewing the well and seeing the oil in it, knowing the amount of oil therein, proceeded to make inquiry for tankage of sufficient capacity to operate the well, not of such kind as was necessary merely to test the same, and that immediately thereafter, at Neosho Falls, he very favorably expressed himself concerning the well and held a jollification meeting because of his elation over the character of the well that had been procured. The evidence distinctly shows that,

Union Gas and Fuel Corporation v. Teton Syndicate.

without any request from plaintiff, a great amount of work was done upon the well and large expense incurred to improve it or save it as an oil well.

"This lawsuit has arisen as much because of the lack of the saying of things that ordinarily would be said as from the talk that was actually had. It would have been very easy for the defendant to have said to plaintiff: 'Now, I do not know whether this will be a paying oil producer or not and wish to make a further test upon the well to determine that fact,' and it would have been the natural thing, it seems, to have had some talk as to who should pay the expense of the work which it desired to be done to more accurately determine the character of the well. No talk of this kind was indulged in, but, leaving those things very indefinite, the defendant, as stated, either caused or occasioned a great deal of work to be done either to improve or develop or save the well, and then informed the plaintiff that it was not satisfied that the well was a paying oil producer.

"The court further believes that the jury had some evidence upon which to find that the defendant satisfied itself that the well was a paying oil producer. Whether it was the testimony concerning the jollification or that concerning the inquiry about procuring tanks for use upon the property, or whether it was the fact that defendant without any express arrangement with plaintiff participated in the incurring of a large amount of expense upon the well after notice by the plaintiff that it was an oil well, the court cannot say. The court does not know what portion of the evidence influenced the jury. But the court, after a very careful weighing of the matter, has concluded that there was substantial evidence to show that the defendant satisfied itself that the well was a paying oil producer, and that it was because of adverse conditions and the unfortunate termination of the work done after the notification that it was an oil well that induced the defendant thereafter to announce that it was not satisfied. The question is such a close one and the evidence so susceptible of different conclusions that the court does not feel warranted in saying that the jury erroneously decided in favor of the plaintiff."

The defendant in its brief enumerates and discusses what it terms the principal questions for this court to consider. The first three are thus formulated:

"First. Was the defendant, under the terms of its contract, required to accept the well in question, although not satisfied that it was a paying oil producer?

"Second. Did it have a right under the contract to make a fair test of the well before accepting it?

"Third. After making the test, did it in fact accept or reject the well?"

1. As already stated, there is no controversy upon the first question, and it may be granted that the defendant had a right to make a fair test of the well before accepting it. The third question does not indicate with accuracy the function of this court, which as applied to the matter there involved is to determine whether there was any

substantial evidence to support a finding that the defendant was satisfied the well was a paying oil producer and accepted it, bearing in mind that where the facts testified to are open to different inferences those drawn by the jury and approved by the trial court are controlling. There was evidence that at the instance of the defendant underreaming and related work involving an expenditure of about $3,000 was done upon the well. In our judgment there was room for a reasonable difference of opinion, under all the testimony, whether this was, on the one hand, a part of a test by the defendant to determine whether the well was a paying oil producer, resulting in a decision in the negative; or, on the other, an attempt to put it in condition for its operation, abandoned because it was spoiled by water getting into it as a consequence of the process. We think it unnecessary to undertake to set out the evidence in detail.

2. A fourth question stated by the defendant is in substance whether the trial court erred in telling the jury that *if* it was the duty of the defendant to take over the well it could not recover damages for failure of the plaintiff thereafter to care for it properly. The instruction also placed upon the defendant the duty of mitigating any damages caused by the plaintiff by the use of reasonable care on its own part. The objection made to the instruction is that there was no evidence that it was the duty of the defendant to take over the well. One phase of this contention has already been considered. The further point is presented that the title to the well never vested in the defendant, because under the first paragraph of the contract heretofore quoted it was not to pass until payment of the agreed amount, which was never made. We do not think the general rule concerning the passage of title on payment and delivery where goods are sold to be delivered by the seller is applicable here; nor do we think the position of the defendant, if it was satisfied the well was a paying one and took charge of it, could be bettered by its omission to make the payment required of it by the contract.

3. The final proposition raised by the defendant is that it was entitled to a peremptory instruction in its favor upon a claim for damages for failure of the plaintiff to drill additional wells. This is but a renewal of the contention that there was no evidence to support the finding that the defendant was satisfied the well was a producer and accepted it. If that finding stands, the defendant, having repudiated its own obligation, is not in a position to recover for the plaintiff's refusal to go ahead with the contract.

The judgment is affirmed.