No. 44,789

THE TOPEKA SAVINGS ASSOCIATION, a Corporation, *Appellee,* v. CHARLES E. BECK and ULDINE W. BECK, His Wife, *Appellees,* J. E. HEIDE, *Appellant;* and JOHN LEFTWICH.

(428 P. 2d 779)

Opinion filed June 10, 1967.

*M. D. Bartlow,* of Topeka, argued the cause, and was on the brief for the appellant.

*Donald D. Barry,* of Topeka, argued the cause, and *A. Harry Crane, Ward D. Martin, Arthur L. Claussen, Harvey D. Ashworth,* and *John R. Hamilton,* of Topeka, were with him on the brief for the appellee, The Topeka Savings Association.

*Jack A. Quinlan,* of Topeka, argued the cause, and *T. M. Murrell, George A. Scott,* and *Kay McFarland,* of Topeka, were with him on the brief for the appellees, Charles E. Beck and Uldine W. Beck.

The opinion of the court was delivered by

O'CONNOR, J.: This action was commenced by the Topeka Savings Association, hereafter referred to as TSA, to foreclose a real estate mortgage executed by Dr. Charles E. and Uldine W. Beck, husband and wife. The only controversy in the case is between the appellees Beck and J. E. Heide, appellant, concerning who is the legal owner(s) of the property and entitled to the rents and profits therefrom during the period of redemption. (K. S. A. 60-2414 [a].) On issues joined under appropriate pleadings, the matter was tried to the

court. From an adverse determination in the court below, Heide has appealed.

The controlling question before us is whether or not the trial court's conclusion, that Heide had no interest in the property and that the Becks were the owners thereof, should be sustained.

Dr. and Mrs. Beck purchased the property in question in June 1961 for $18,500, and executed a purchase money mortgage in favor of TSA for $16,650. They occupied the property until July 1963, at which time they moved to Danville, Illinois. The house was rented, and the Becks continued to make the payments on the note until December 1964, at which time they defaulted. The Becks then attempted to sell the property through a realtor, but to no avail. Thereupon, Dr. Beck placed an advertisement in a local newspaper in substantially the following language:

"Owner will sacrifice lovely seven room ranch style home in preferred southwest location. Large corner lot, double car attached garage, immediate possession. Appraised price $18,000.00. *Equity free, pick up payments since January 1st and assume mortgage.* Total about $16,100. Write Dr. Beck, V. A. Hospital, Danville, Illinois, or contact Mr. Keever at Topeka Savings." (Emphasis added.)

In response to this ad, Heide, who, among other things, buys and sells real estate and deals in equities, made inquiry of TSA about the balance due on the note and mortgage, and the amount in the reserve accounts for insurance and taxes. Heide then telephoned Dr. Beck and inquired about the sale of the property. According to Dr. Beck, Heide said he wanted the property and would send the necessary papers.

Heide wrote to the Becks on March 30, 1965, enclosing with his letter a postal money order in the amount of $10, a warranty deed form describing the real property, a contract, and assignment forms for the insurance policy and the reserve accounts, which he proposed be signed and executed by them. The contract and warranty deed included the following language:

"Subject to the unpaid balance of all liens and all mortgages pertaining to the aforementioned premises."

Dr. Beck, being unsure of the meaning of the language, and after talking to Mr. Keever of TSA, added the following phrase after the word "premises" on the *deed only:*

"which party of the second part assumes and agrees to pay."

The Becks then executed the deed as altered, signed the contract, the assignment forms, and on April 5, 1965, Dr. Beck returned the

instruments by mail to Heide with a letter of transmittal which read, in part, as follows:

"Sunday evening I called Mr. Keever at Topeka Savings and advised him that you will be taking over the loan. At his suggestion I added a few words on the deed.

"As you will note, payments are delinquent since the first of the year. I assume you found out the exact amount due Topeka Savings to bring them up to date. Payments are due on the fifteenth of the month with a penalty if they are not made by the twenty-fifth."

Upon receiving the deed and the other papers, and without any knowledge on the part of the Becks, Heide altered the deed by adding the following language to the phrase added by Dr. Beck:

"Contracts were not altered; therefore, party of the second part, does not assume and agree to pay!"

Heide then recorded the instrument on April 14, 1965, and said nothing more to the Becks. The Becks first learned of Heide's alteration of the deed when the present action was instituted.

Thereafter, Heide rented the premises to John Leftwich on a month-to-month basis for $140, and received one $140-payment up to the time this action was filed. Leftwich has continued as a tenant, and rentals have been paid to the clerk of the district court during pendency of the action. No payments on the mortgage have ever been made by Heide.

At a pretrial conference it was stipulated that TSA had a valid mortgage lien in the amount of $16,040.03 with interest thereon at 10% per annum from May 10, 1965, and that the mortgage should be foreclosed. The only issue submitted to the trial court for determination was legal ownership of the property.

The district court made findings of fact, substantially as already outlined, and concluded that there was no meeting of the minds between the Becks and Heide regarding a contract of sale, and consequently the Becks were the legal owners of the property. In his memorandum opinion the district judge stated:

". . . Boiled down to its essence the defendants Beck offered to sell their real estate under an agreement by which the defendant Heide would purchase their equity in the property and would agree to pay the back payments due on the note and mortgage to Topeka Savings Association and would assume the mortgage payments. This intention is clearly shown by the change made by Dr. Beck in the warranty deed and by Dr. Beck's letter of April 5, 1965, to Heide. Heide had no right whatsoever to alter the written deed and this alteration was a material alteration not in accord with the clear intention of the Becks. Such alteration in effect constituted a counter offer

which was never communicated to the defendants Beck and therefore there was never any acceptance possible or was there a meeting of the minds between the Becks and Heide. Under these circumstances there was no enforceable contract between the Becks and Heide executed and consummated between the parties."

In addition to entering a personal judgment for TSA against the Becks and decreeing foreclosure of the mortgage, the district court also found that less than one-third had been paid on the purchase price of the property, and fixed the period of redemption at six months; rendered judgment for TSA against Heide in the sum of $130, being the amount of the one rental payment received by him less the $10 paid to him by the Becks; and, under an assignment-of-rents clause in the mortgage note, all rents in the hands of the clerk of the district court, as well as any payment made on TSA's judgment against Heide, were to be paid to TSA and credited to its judgment against the Becks.

Although Heide raises numerous points as error, his main contention pertains to the trial court's conclusion that there was no meeting of the minds between the Becks and Heide and that Becks were the owners of the property. The thrust of his argument is that the contract was the controlling instrument in the transaction, and since Beck altered the deed and the alteration did not agree with the language of the contract, Heide had every right to add the words, "Contracts were not altered; therefore, party of the second part, does not assume and agree to pay!" to make the deed conform to the contract.

It is undisputed that the contract and deed prepared by Heide were simultaneously sent to and executed by the Becks. Both pertain to the real estate in question, and were part of the same transaction. It is a well-settled principle of contract law that where two or more instruments are executed by the same parties at or near the same time in the course of the same transaction and concern the same subject matter, they will be read and construed together. (*In re Estate of Cooper*, 195 Kan. 174, 403 P. 2d 984; *Farmers & Merchants Bank v. Copple*, 190 Kan. 170, 373 P. 2d 219; *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, 189 Kan. 125, 368 P. 2d 19; *Dearborn Motors Credit Corporation v. Neel*, 184 Kan. 437, 337 P. 2d 992.) When the contract and deed, as altered by the Becks, are read and construed together, we find conflicting language concerning the assumption by Heide of any liens or mortgages on the property. Dr. Beck's accompanying letter of transmittal to

Heide reveals it was Beck's intention that Heide take over the note and mortgage and bring the payments up to date. This intention was consistent with the language of the deed as altered by Dr. Beck, as well as with the contents of the newspaper ad which stated in part: ". . . pick up payments since January 1st and assume mortgage." Heide, on the other hand, instead of accepting the deed as altered, added language which clearly showed he had no intention of assuming and paying the note and mortgage. Heide's action was contrary to the Becks' intention, as expressed throughout the entire transaction, and unless Heide's final alteration of the deed was agreed to by the Becks, no sale resulted.

From the written language employed by each of the parties, as well as their respective conduct and actions, it becomes obvious that there was no meeting of the minds. In order for parties to form a binding contract, there must be a meeting of the minds as to all the essential terms thereof. (*Allen v. Bowling*, 173 Kan. 485, 249 P. 2d 679; *Sinclair Prairie Oil Co. v. Worcester*, 163 Kan. 540, 183 P. 2d 947; *Broadview Oil Co. v. Livengood*, 156 Kan. 514, 134 P. 2d 378; 17 Am. Jur. 2d, Contracts § 18; 17 C. J. S., Contracts § 31.)

No question is raised concerning the sufficiency of the evidence to support the district court's findings of fact, nor are the facts upon which the court relied in reaching its decision seriously controverted. We are therefore concerned only with the correctness of the court's conclusion of law. From our examination of the record, and for the reasons already stated, we are of the opinion the district court properly found there was no meeting of the minds between the parties and no contract existed.

Heide also complains of the judgment rendered against him for the month's rent he received prior to TSA's instituting foreclosure proceedings. The mortgage note provided in part that the Becks assigned to TSA any rents arising from the property and authorized TSA, at its option, to enter into possession and to collect all rents and income and apply the same to payments due, provided the note was in default. The Becks, as owners, have not challenged TSA's right to the rental; and since we have already determined that Heide is not the owner of the property, under the assignment-of-rents clause he is in no position to contend he is entitled to the rents therefrom as against TSA. Thus, the district court's judgment against Heide must stand. Other points raised by Heide have been examined and found to be completely devoid of merit.

The judgment of the lower court is affirmed.