No. 45,650

Shunga Plaza, Inc., and American Savings Association of Topeka, Kansas Corporations, *Appellants*, v. American Employers' Insurance Company, *Appellee*.

(465 P. 2d 987)

Opinion filed March 7, 1970.

*John E. Davis* and *Jerry W. Hannah*, both of Topeka, argued the cause and were on the briefs for the appellants.

*J. Roger Hendrix*, of Topeka, argued the cause, and *Herbert A. Marshall*, of Topeka, was with him on the brief for the appellee.

The opinion of the court was delivered by

Hatcher, C.: This appeal stems from a controversy over the deletion of an item of property from an insurance policy.

The facts are not in dispute.

Robert J. Bernica and Dana K. Anderson and their wives owned properties located at 1122 Van Buren and at 216 Huntoon, both in Topeka, Kansas. The defendant, American Employers' Insurance

Company, issued its insurance policy insuring the house at 1122 Van Buren in the sum of $4,000.00 and the house at 216 Huntoon in the sum of $8,000.00. It is agreed that the policy provided insurance protection against loss by tornadoes.

On or about February 4, 1966, both properties were conveyed to plaintiff, Shunga Plaza, Inc. The insurance policy was assigned to this corporation with defendant's consent. The policy premium had been paid in full. The policy period was to begin November 29, 1965, and expire November 29, 1966.

Shunga Plaza, Inc. consisted of three stockholders who were directors, namely: Dana K. Anderson, Robert J. Bernica and J. W. Hannah. Hannah was president and Mr. Bernica was secretary-treasurer.

The assets of the Shunga Plaza corporation consisted of the above-described properties and an unimproved lot.

Robert E. Gucker was the insurance agent who handled the insurance in question. He had sold the original policy and handled the later endorsement for defendant.

The American Savings Association of Topeka, one of the plaintiffs, was named in the mortgage clause of the policy as the holder of a mortgage on the houses. The policy had the usual loss-payable clause to protect the mortgagee.

A representative of defendant inspected the insured premises, and because of the condition of the house at 1122 Van Buren, decided it should cease coverage of that house. Accordingly, Gucker computed the amount of refund due Shunga Plaza at $20.00. He prepared, and on or about February 23, 1966, mailed to Mr. Bernica an endorsement to the original policy. The endorsement reduced the coverage from a total of $12,000.00 to a new coverage of $8,000.00 and deleted item # 1, the $4,000.00 coverage on the house at 1122 Van Buren, from the policy.

Copies of the executed endorsement were then mailed by Bernica to Gucker, and were received in the mail by the latter. Gucker mailed an executed copy of the endorsement to the plaintiff, American Savings Association, which association received a copy bearing the signature of "Shunga Plaza, Inc., by Robert J. Bernica," and placed the same in its file with its security papers. The American Savings Association received a copy of the endorsement between February 23, and March 8, 1966, the exact date being unknown.

On March 8, 1966, Gucker executed his company check in the

sum of $20.00 payable to Robert J. Bernica. This check was mailed to Bernica in the usual and ordinary course of business from Gucker's office by United States mail. The check has not been presented for payment and has not cleared the bank. This fact did not come to the attention of Gucker until after June 8, 1966. The check was not received by Bernica.

On June 8, 1966, the house at 1122 Van Buren, Topeka, Kansas, was totally destroyed by a tornado.

On June 8, 1966, the American Savings Association, plaintiff, held a mortgage on both the Van Buren and the Huntoon properties. Both properties were included in the same mortgage and the unpaid principal sum on that date was $11,501.08. This mortgage at the date of trial remained unpaid.

Shunga Plaza, Inc. and American Savings Association of Topeka brought an action to recover the $4,000.00 for which the property at 1122 Van Buren was originally insured. They contended that the property had never been deleted from the policy.

The trial court concluded:

"The alteration of the original rights and obligations of the parties to this agreement was contained in an endorsement to the original policy. This endorsement was clear and unequivocal. This is simply a new agreement as to a portion of the coverage afforded by the policy. When this endorsement was 'signed and accepted' by Shunga Plaza, through its authorized officer, Mr. Bernica, it became a contract. This was a bi-lateral contract between the parties as to the new relationship created.

.    .    .    .    .    .    .    .    .    .    .    .    .

"What we have here is a bi-lateral agreement created by the endorsement—this is simply a new contract. Coverage is deleted on the Van Buren property and defendant company owes Shunga Plaza the $20.00. Payment of the $20.00 is not a condition precedent to the effectiveness of the endorsement."

The plaintiffs have appealed.

Before considering appellants' contentions it would perhaps be helpful if we review briefly the exact transaction which we have before us for consideration.

The policy provided a method for cancellation. The provisions of the policy for cancellation were not followed—perhaps for the reason this did not purport to be a cancellation but was the deletion of a single item. We must, therefore, find a separate and complete agreement.

In 45 C. J. S., Insurance, § 444, p. 71, we find the following statement:

".   .   .   A method of cancellation provided for in the insurance policy is

not necessarily exclusive so as to preclude an effective cancellation by mutual agreement without compliance with the method so provided, and a requirement of notice as a condition precedent to cancellation does not apply to a termination by mutual consent." (See, also, *Riddle v. Rankin*, 146 Kan. 316, 69 P. 2d 722.)

The appellee desired to delete item # 1, the insured property at 1122 Van Buren, because of its condition.

An endorsement, standard in form, was mailed by Robert Gucker on behalf of the appellee to Robert J. Bernica, secretary of the appellant, Shunga Plaza, Inc., to be attached to the policy of insurance. The endorsement is too cumbersome to be presented in full. It was headed:

"ENDORSEMENT

(To be attached to policy)"

It stated:

"Attached to and forming part of Policy No. A 22-10385-62
"Effective Date of Endorsement 2-23-66"

The endorsement gave the amount of the return premium— $20.00. The following was typed at the bottom of the printed form:

"In consideration of return premium of $20.00. It is understood and agreed that item # 1 is deleted from this policy.

Signed and accepted ✕_____"

Written in the blank space following the ✕ was:

"Shunga Plaza, Inc.
By: Robert J. Bernica"

The endorsement with copies were mailed to Robert J. Bernica with a letter of transmittal, which read:

"Please sign and return all copies where the ✕ is indicated. Please be sure and sign Shunga Plaza, Inc., by you. Please find enclosed a stamped, self addressed envelope and return promptly.

"A check for the return premium will be sent to you when we receive confirmation from company."

The appellants first contend that the trial court erred in its conclusion that the endorsement created an enforceable bi-lateral contract for the reason that there was failure of consideration.

We see no merit in the contention. The endorsement clearly stated it was to be effective February 23, 1966, which was about the time it was mailed to Bernica on behalf of Shunga Plaza, Inc. This was in consideration of the return premium of $20.00. When Mr. Bernica signed the company's name to the endorsement and mailed

the signed copies to Mr. Gucker, the agreement to delete the property at 1122 Van Buren from the policy was complete and binding. The appellee was then obligated to pay the $20.00 return premium. The fact that the check for $20.00 was not delivered in the due course of the mail did not reinstate the deleted insurance.

The receipt of the $20.00 was not a condition precedent to the validity of the endorsement which deleted part of the coverage. As we have said, the endorsement was definitely stated to be effective February 23, 1966.

It is a general rule that a promise by one party is a sufficient consideration for a promise or an act by another. It is the promise and not the performance thereof that constitutes the consideration. These rules were considered in *First Federal Savings & Loan Ass'n v. Thurston,* 148 Kan. 88, 80 P. 2d 7, where we said:

"It is said in 12 Am. Jur., Contracts, § 113:

" 'Subject to qualifications, hereinafter stated, it is a general rule that a promise by one party is a sufficient consideration for a promise by the adverse party. . . .

" 'It is the promise, and not the performance thereof, that constitutes the consideration for the promise. Nonperformance of a promise which was the consideration for another promise does not constitute want of consideration, although it may be ground for an action for damages.'

"This also answers an argument made in the brief of appellee that plaintiff could have recovered against her husband for the balance due on the sale of the lot by suit on the original contract. The only recovery that could have been had against the husband on a breach of that contract by him would have been damages, and not the balance of the purchase price.

"In Kramer v. Walters, 103 Kan. 135, 172 Pac. 1013, it was held that—

" 'A binding contract can be made by mutual promises; each promise furnishes a sufficient consideration for the other.' (Syl. ¶ 4.) (See, also, *Peoples Exchange Bank v. Miller,* 139 Kan. 3, 29 P. 2d 1079, and 6 R. C. L. 676.)" (p. 94.)

Appellants argue:

"It is too late to return the premium after the damage has been done. It should have been returned upon confirmation of the company [when the copies of the endorsement were returned] or at least within a reasonable time. . . ."

Assuming the validity of appellants' argument, we cannot say that three months was an unreasonable time under the circumstances. The check for the $20.00 return premium was mailed at once. It was its loss in the United States mail that caused the delay. We do not have a situation here where the party intentionally

causing the failure of consideration is attempting to enforce the provisions of the contract such as was present in the cases mentioned by appellant. (*Union Gas and Fuel Corporation v. Teton Syndicate,* 119 Kan. 236, 237 Pac. 908; *De Forest Radio, Telephone & Telegraph Co. v. Standard Oil Co. of New York,* 238 Fed. 346.)

The appellants contend that the trial court erred in its conclusion that a new contract was created by the endorsement. This is based largely on the contention that there was no meeting of the minds.

The case was tried to the court without a jury. The appellants introduced some evidence as to Mr. Bernica's expectations and impressions. However, the trial court, in a well written memorandum opinion, makes no reference to and bases no findings on such oral testimony. It found that:

". . . This endorsement was clear and unequivocal. This is simply a new agreement as to the portion of the coverage afforded by the policy. . . ."

An unambiguous agreement is not subject to interpretation. When the intent of the parties is evidenced by a clear and unequivocal written agreement, the intention ceases to be an issue and the courts are bound by the agreement.

The endorsement states specifically the policy number, the name of the insurance company, the original amount of the policy, the new amount of the policy with the deletion, the total amount of the premium, the amount of the unearned premium and the effective date of the endorsement. There was also the mutual agreement to delete item # 1:

"In consideration of return premium of $20.00. It is understood and agreed that item # 1 is deleted from this policy."

There is no basis for construing such clear and unambiguous language. In *Knouse v. Equitable Life Ins. Co.,* 163 Kan. 213, 181 P. 2d 310, we stated at page 216 of the opinion:

". . . Where a contract is not ambiguous, the court may not make another contract for the parties; its function is to enforce the contract as made. (*State Highway Construction Cases,* 161 Kan. 7, 166 P. 2d 728; *Watkins v. Metropolitan Life Ins. Co.,* 156 Kan. 27, 131 P. 2d 722; *Movitz v. New York Life Ins. Co.,* 156 Kan. 285, 133 P. 2d 89; and *Gorman v. Fidelity & Casualty Co. of New York,* supra [55 F. 2d 4]." (See, also, *Braly v. Commercial Casualty Ins. Co.,* 170 Kan. 531, 538, 227 P. 2d 571.)

Also in *Anderson v. Rexroad,* 175 Kan. 676, 266 P. 2d 320, we stated:

". . . The established rule is that the intention of the parties and the meaning of a contract are to be deduced from the instrument where its terms

are plain and unambiguous; that when the language is clear and unequivocal the meaning must be determined by its contents alone; that words cannot be read into a contract which import an intent wholly unexpressed when it was executed; and that the court may not make an agreement for the parties which they did not make for themselves (See West's Kansas Digest, Contracts, § 143; Hatcher's Kansas Digest [Rev. Ed.], Contracts, § 40). . . ." (p. 679. See, also, *Blair v. Automobile Owners Safety Ins. Co.*, 178 Kan. 615, 617, 290 P. 2d 1028.)

The appellants challenge the trial court's finding that Mr. Bernica had authority to cancel insurance on behalf of the appellant, Shunga Plaza, Inc.

On this issue the trial court found:

"Mr. Bernica, as secretary-treasurer of Shunga Plaza, had and exercised authority to write checks, receive rents, handle insurance matters for the corporation. Plaintiffs claim Bernica was required to have a corporate resolution to handle this insurance matter; the evidence is that this is a loosely operated corporation and the board of directors never met anyway. Mr. Bernica certainly had authority to handle insurance matters for the corporation, in fact, as well as impliedly."

Part of Mr. Bernica's testimony is summarized in the record as follows:

". . . Mr. Bernica could not recall whether there were any business meetings held in January, February or March of 1966. There was no corporate resolution when the insurance policy was transferred to the corporation in January of 1966, and there was no corporate resolution authorizing Mr. Bernica to sign the Endorsement. At the time of the loss involved herein, any two of the three stockholders, the stockholders being Mr. Bernica, Mr. Anderson and Mr. Hannah, were authorized to write checks on a co-signing basis. Mr. Anderson and Mr. Bernica collected the rents on the buildings involved herein and *Mr. Bernica handled all insurance matters and transactions affecting funds.*" (Emphasis supplied.)

There being substantial evidence to support the trial court's findings on this issue, we adhere to the well established rule that it is not the province of this court to weigh the evidence on appellate review.

The authority to release corporate rights may be inferred from past conduct of the corporation or the corporation may be bound by an agent acting within the apparent scope of his authority. (19 Am. Jur. 2d, Corporations, § 1193, p. 614.)

In *Thresher Co. v. Implement Co.*, 103 Kan. 532, 175 Pac. 392, we held:

"While a secretary of a corporation ordinarily has not authority by virtue of his office to bind his corporation, the corporation may be bound by his acts

when it intrusts him with the management of its business, and where his acts are in furtherance of the corporate business." (Syl. ¶ 2.)

A careful examination of the record discloses nothing that would justify our disturbing the judgment of the trial court.

The judgment is affirmed.

APPROVED BY THE COURT.

SCHROEDER, J., dissenting: Basically we are dealing with a simple bilateral contract which, in my opinion, never materialized because there was no meeting of the minds.

The court says the endorsement, standing alone, was not ambiguous. This I concede, but we are concerned with another document as well, which the court seems to ignore.

Both the insurance company and the insured were acting through duly authorized agents, Gucker for the defendant insurance company, and Bernica for the insured.

Of the three documents involved in this action the insurance policy, which contained cancellation provisions, is not of primary concern. The cancellation provisions of the policy were not invoked. On the facts here it must be conceded whether the coverage of the Van Buren property under the policy was deleted is the subject of independent contract.

The two documents upon which the insurance company relies to establish a bilateral contract for the deletion of the Van Buren property are the endorsement which was to be attached to the policy and the letter of transmittal. The endorsement was contained on a form entitled what is denominated "Uniform Standard." It recited among other things: "In consideration of return premium of $20.00. It is understood and agreed that item # 1 is deleted from this policy." It also bore the entry "Effective Date of Endorsement 2-23-66." The letter transmitting the endorsement was entitled "Redi-Memo" on stationery bearing the insurance company's name indicating it was from Gucker's office. It was dated "2-23-66." This document has been referred to as the letter of transmittal wherein Gucker told Bernica how to sign the endorsement. It reads:

"Please sign and return all copies where the X is indicated. Please be sure and sign Shunga Plaza, Inc., by you. Please find enclosed a stamped self addressed envelope and return promptly.

"*A check for the return premium will be sent to you when we receive confirmation from company.*" (Emphasis added.)

The endorsement and the letter enclosing it were the only communications of any kind in evidence between the insured and the insurance company regarding deletion of the Van Buren property from the provisions of the policy. There were no other negotiations.

The undisputed testimony shows that Bernica expected something more—some further notice—before the policy was cancelled as to the Van Buren property. His impression from the endorsement and the letter transmitting it was that the insurance company intended to cancel the policy, but he was not concerned because he had not received the follow-up concerning deletion of the Van Buren property from the policy. He testified:

"I did not consider this document in itself as a cancellation of this policy, and in not receiving anything—any further notice in regards to cancellation, I was not concerned at this time that the policy was cancelled."

There is no question but that the Van Buren property, which is the subject of this litigation, was destroyed by tornado before the insured received notice of "confirmation from company" by receipt of a check from the insurance company in payment of the $20 return of premium. The court by confining its consideration of the parties' dealings to the endorsement holds that a clear unambiguous bilateral contract was effected, thereby ignoring language in the letter of transmittal which stated "A check for the return premium will be sent to you when we receive confirmation from company."

Was the insured entitled to rely upon this provision in the letter of transmittal when it received the form endorsement from Gucker?

It is well settled in this jurisdiction where two or more instruments are executed by the same parties contemporaneously, or even at different times in the course of the same transaction, and concern the same subject matter, they will be read and construed together so far as determining the respective rights and interests of the parties, although they do not in terms refer to each other. (*West v. Prairie State Bank,* 200 Kan. 263, 267, 436 P. 2d 402; and *Topeka Savings Association v. Beck,* 199 Kan. 272, 428 P. 2d 779.)

Here both instruments were prepared and executed by Gucker and mailed at the same time to Bernica dealing with the same subject matter. They must be construed together.

Surely one interpretation of the two instruments, construing them together, is that the endorsement deleting the Van Buren property, which Bernica signed and returned to Gucker, would not be binding upon the insurance company until it approved

Gucker's action by confirming the deletion; that the insured was to be notified of the confirmation by the insurance company by sending a check to the insured in the sum of $20 for the return premium.

The Supreme Court is not bound by the trial court's interpretation of these documents. Where the validity of an instrument in writing has been properly established in the trial court and accepted in evidence, this court on review will make a determination for itself as to the interpretation to be placed upon such written instrument. (*Hill v. Hill,* 185 Kan. 389, 345 P. 2d 1015; and *Keeler Co. v. Atchison, T. & S. F. Rly. Co.,* 187 Kan. 125, 354 P. 2d 368.) Here the validity of the two instruments in question was properly established in the trial court and accepted in evidence. Therefore, the Supreme Court on review may make a determination for itself as to the interpretation to be placed on the two instruments.

If there was a meeting of the minds between Gucker and Bernica, it was that confirmation by the insurance company was necessary to effect the deletion of the Van Buren property from the policy and that Bernica would be notified of such confirmation.

Coupled with the rule that ambiguities must be construed against the insurance company, it is clear the insurance company failed to sustain its burden of proof to show there was a meeting of the minds to consummate a binding bilateral agreement wherein one promise was consideration for the other.

The burden of proof that an insurance policy has been cancelled lies upon the insurer alleging it, no matter what method of cancellation is relied upon. (*Plotner v. National Fire Ins. Co.,* 118 Kan. 234, 239, 234 Pac. 959; *Riddle v. Rankin,* 146 Kan. 316, 69 P. 2d 722; and *Clark v. Employers Mut. Casualty Co.,* 90 F. 2d 667 [8th Cir. 1937].)

To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent. (*Riddle v. Rankin,* supra.) The evidence must show reasonable definiteness that the minds of the parties met upon the subject matter and agreed upon its terms. (*Mooney v. Merriam,* 77 Kan. 305, 94 Pac. 263; and *Smith v. Hartford Fire Ins. Co.,* 120 Kan. 53, 242 Pac. 455.)

It has also been held that to constitute a cancellation by mutual agreement it should be clear the insured knew and understood that

his policy was being cancelled. (*Plotner v. National Fire Ins. Co.,* supra.)

The reason behind the rule which requires that there be a meeting of the minds when the cancellation of an insurance contract is involved is the importance of insurance itself. It is important that' the insured know for certain when insurance will be terminated so that he may provide for other insurance. In recognition of this principle the court has cast the burden on the insurance company to make sure there is a clear understanding between the insured and the insurance company. It is implemented by the rule of strict construction against the insurance company (*Coffey v. Girard Ins. Co.,* 182 Kan. 599, 602, 322 P. 2d 345), and the rule requiring *actual receipt of notice of cancellation as a condition precedent to cancellation.* (*Merrill v. Farmers' Alliance Ins. Co.,* 155 Kan. 31, 122 P. 2d 776.)

Holding in favor of the insurance company would tend to encourage insurance agents to play both ends against the middle. For example, assume an agent received notice from his company that the company wanted to cancel its policy of insurance. If agents were permitted to send the cancellation to the insured asking him to sign and return the cancellation, with a statement that the unearned premium would be returned upon confirmation from the company, the agent may be safe in sending the release on to the company and holding the return premium. If no damages were sustained the agent could retain the return premium and tell the insured that cancellation had never been confirmed. A simple entry on the agent's records that a check had been written and sent would protect the agent if damages were sustained. (See *Service v. Pyramid Life Ins. Co.,* 201 Kan. 196, 440 P. 2d 944; and *Merrill v. Farmers' Alliance Ins. Co.,* supra.)

There is nothing magic about the recital in the endorsement to delete the Van Buren property that it was to be effective February 23, 1966, because there was never a meeting of the minds, hence no binding contract. If confirmation by the insurance company had actually been communicated to its agent Gucker, who in turn communicated this fact to Bernica by sending a check for the return premium prior to the insured's sustaining a loss under the policy, the contract would be complete and relate back to the effective date indicated in the endorsement. Until such time as the insured

received notice of confirmation by the company the property would be covered by the policy of insurance.

Here the endorsement and the letter enclosing it show nothing more than an attempt to cancel the policy. The insurance company failed to sustain the burden to show there was mutual agreement between the parties.

It is respectfully submitted the policy of insurance was effective as to the Van Buren property on the date of the loss by tornado on June 8, 1966, and the lower court should be reversed. The insurance company was in a position to accept the endorsement deleting the Van Buren property by notifying the insured of its confirmation. Until such notice the policy remained in force. Here confirmation by the company was never communicated to the insured.

FATZER and FONTRON, JJ., join in the foregoing dissent.