No. 44,763

PHILLIP CROUCH, *Appellant,* v. ROY MARRS, MARTIN ASCHE, THE PUREX CORPORATION, LTD., a Corporation, FRANK KNOX AND C. & D. USED TRUCK PARTS, *Appellee.*

(430 P. 2d 204)

Opinion filed July 12, 1967.

*Robert M. Baker,* of Ashland, argued the cause and was on the briefs for the appellant.

*Don Smith,* of Dodge City, argued the cause, and *R. R. Mitchell* and *B. G. Larson,* both of Dodge City, and *Bradley Post* and *E. Keith Beard,* both of Meade, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This was an action to enjoin interference with plaintiff's right of ingress and egress to land on which was located a building he was attempting to salvage. The result of the action was to have the title to the building determined.

Judgment was rendered against plaintiff and he has appealed.

At the outset we are confronted with appellees' contention that the appeal should be dismissed because of the failure of appellant to take a procedural step within the time required by the rules for appellate review. This question will be determined before we proceed with a consideration of the appeal on the merits.

Appellees' contention is well stated in its brief as follows:

"Under Rules of the Supreme Court, Sec. 60-2701, No. 6 (*a*), K. S. A., if, as in this case, no stenographic transcript of proceedings in the District Court is required, the designation of the contents of the record and also the statement of points [Rule No. 6 (*d*)], 'shall be served and filed in the District Court within ten (10) days from the filing of the notice of appeal.' Appellees believe the record has *not* [now] been clarified and that the notice of appeal was served on June 15, 1966, and was filed on June 16, 1966; and that appellant's designation of the record and statement of points were served on June 29, 1966, and were filed on June 30, 1966.

"Thus the record clearly shows that appellant did not comply with the requirements of this rule as more than ten (10) days elapsed between the time appellant filed and served his notice of appeal and the time appellant filed and served his designation of the record and his statement of points." (Emphasis supplied.)

Disposition was made of the case on motion for summary judgment, hence no transcript was required for appeal. The two rules mentioned by appellees are Rule No. 6 (a) which provides in part:

"If no stenographic transcript of proceedings in the district court is required to be prepared for an appeal, the designation of the contents of the record by the appellant shall be served and filed in the district court within ten (10) days from the filing of the notice of appeal. . . ."

and that part of Rule No. 6 (d) which reads in part:

"Each appellant shall serve and file with his designation of the record a concise statement of the points on which he intends to rely and which will be briefed in the appeal. . . ."

The effect of the violation of the above rules and provisions for extension of time are to be found in Rule No. 6 (q) which reads:

"Whenever an appellant fails to complete any step necessary to the docketing of an appeal within the time prescribed by this Rule, he shall be deemed to have abandoned the appeal unless the time for such step shall be extended by the Judge of the court from which the appeal is taken for good cause and after reasonable notice to the other parties. Whenever an appellee fails to complete any step permitted to him within the time prescribed by this Rule, he shall be deemed to have waived his right to such step unless the time for the same shall be extended by the judge for good cause and after reasonable notice to the parties affected. The refusal of the judge to extend the time for the completion of any such steps shall be final, unless the Supreme Court shall upon immediate application, filed in accordance with Rule No. 7, find such refusal to have been an abuse of discretion and shall grant such extension as justice may require. . . ."

The rules mentioned are procedural in nature and not jurisdictional. The failure of the members of the bar to abide by the rules has given this court many troublesome moments. Because we do not think that a litigant should be denied the right of appeal on technical procedural grounds, we have simply ignored the rule where the time violation was not unreasonable. Having ignored the rule in the past in order that no litigant be denied the right to appeal, we are not inclined to make a strict application of the rule at this time and apply the only sanction available which is the dismissal of the appeal. We favor a liberal application of the rules of appellate procedure in order that a litigant not be denied his statutory right to appeal.

It should be suggested that in an attempt to make the application of the rules definite, Rule No. 6 (*q*) was amended to become effective January 1, 1967, by inserting the following:

".   .   . No application for an extension of time in which to complete any step may be considered by the Judge of the court from which the appeal is taken unless such application is filed prior to the expiration of the period of time which is sought to be. extended. Such application may be heard and ruled upon before or after the expiration of such period of time.   .   .   ." (See 197 Kan. LXIV.)

The addition did not prevent delay in filing but did make it more difficult to grant relief. This court has again amended the rule by changing the above provision to read as follows:

".   .   . No application for an extension of time in which to complete any step may be considered by the Judge of the court from which the appeal is taken unless such application is filed prior to the expiration of the period of time which is sought to be extended, *except in those cases where the failure to file such application before the time has expired is the result of excusable neglect.   .   .   .*" (Advance Sheet 199, No. 2 III.)

The amendment took effect July 1, 1967.

It is hoped that this amendment will make enforceable the rule for orderly appellate procedure by leaving the extension of time in the discretion of the trial judge who is familiar with the facts.

Approaching the merits of the controversy the facts do not appear to be in dispute.

Six miles north of Meade, Kansas, was an old silica processing plant which was owned by the Purex Corporation of Lakewood, California. The plant had not been used for many years.

On February 26, 1964, the plaintiff, Crouch, wrote to the Purex Corporation asking for their lowest price if they were interested in selling the building and its contents. The letter read in part:

"I would be interested in buying the old building that housed the plant and what other items that are still left. The items that are still left are: two crushers, furnace and the elevator is about all that is left."

On March 4, 1964, Crouch received a letter of reply from Purex Corporation signed by Frank Knox which stated:

"We will sell this building and the equipment in and about that building for a total of $500."

On March 19, 1964, Crouch wrote to Frank Knox, Purex Corporation, stating that the building was in "pretty bad condition" and asking "would you consider taking $300.00 for what is left?" This letter was not answered.

Later, on April 16, 1964, Crouch addressed another letter to Frank Knox, Purex Corporation, which read:

"I guess we will try the building for the amount you quoted, $500.

"I am sending you a personal check for this amount.

"It will be 2 or 3 weeks before we can get started; and I presume that we will be allowed all the time that we need to remove the material."

It is conceded that this letter constituted a new offer and was not a continuation of the previous negotiations.

The record discloses the following information relative to the check mentioned in the above letter:

"Piqua, Kansas, April 16, 1964 No. ———
THE PIQUA STATE BANK

Pay to the order of    FRANK KNOX    $500.00

Five Hundred and no/100  .  .  .  Dollars

For Silica building and        /s/ Phillip Crouch

Equipment in and about that building

REVERSE SIDE:

Endorsement: Frank Knox

            Pay to the order of Purex Corporation

            Frank Knox

            Pay to order of California Bank

            Purex Corporation Ltd.

            General  Account

"The original check which is this exhibit, also has the customary numerous clearing house stamps on the back; among them:

April 23, 1964, Los Angeles Clearing House

April 27, 1964, Kansas City Clearing House

"The check was paid and cancelled by the Piqua Bank on April 29, 1964."

On April 17, 1964, the Purex Corporation, through Frank Knox, wrote a letter to Martin Asche which stated:

"In answer to your inquiry about our property approximately six miles north of Meade, Kansas.

"We will sell for $500.00 the mine building and whatever machinery and equipment which remains in or about that building.  A conditon of sale will require that the property purchased be removed from the premises within forty-five  days.

"If this price is acceptable we will be pleased to receive a cashier's check to cover."

On April 24, 1964, Asche wrote a letter accepting the offer of April 17, which reads:

"We are enclosing a cashier's check for $500 and the bill of sale of mine buildings with the agreement of option to purchase property.

"If the corporation has any other property and machinery in this area for sale, we would be pleased to deal with the corporation.  It was our pleasure to deal with the Purex Corporation."

On April 27, 1964, Frank Knox sent Crouch the following telegram:

"Your counter offer received April 23 is unacceptable. Your check mistakenly deposited by Purex will be recovered and returned to you or Purex check will be issued to you if your check cannot be located."

There followed a letter dated May 16, 1964, which read:

"This is a follow-up to our telegram to you of April 27, advising you that your check which we received on April 23 was not acceptable, but that it had been deposited by mistake. Since we were unable to recover your check, we herewith enclose our check for $500 to reimburse you.

"We wish to explain, that the reason we could not accept your counter-offer of $500 for the mine building and machinery at Meade, Kansas, was because we had received and accepted an offer from another party prior to receipt of yours on April 23."

In the meantime Martin Asche had entered into a contract to sell the building to Roy Marrs who owned the land surrounding the building site for $500 and had entered into a contract to sell the equipment to the C. & D. Used Truck Parts for $800.

Crouch commenced salvage of the building but Roy Marrs put a lock on the gate and would not allow Crouch to enter.

Crouch then brought an action to enjoin Marrs from interfering with his salvage operations. Marrs answered alleging that he had purchased the building from Asche and asked that Asche be made a third party defendant. Asche answered alleging he had purchased the building and equipment and had sold the building. He asked in the alternative that if Crouch be declared to be the owner that he be given judgment against Purex Corporation and demanded that it be made a party.

Purex Corporation's answer alleged in substance—if there was a sale, it was induced by plaintiff's representations and that Purex should be given $5,000 as damages from Crouch; that plaintiff knew that Asche was attempting to purchase the premises and plaintiff did not have "clean hands"; that it knew nothing of loss or damages to defendant Asche or Marrs; that it had sold the property to Asche on or about April 24, 1964, for $500; that it had guaranteed nothing nor was Purex required to furnish clear title to Asche or any of his assigns; that defendant Asche knew that plaintiff Crouch was attempting to purchase the premises and with quiet speed and secrecy so as to exclude plaintiff from obtaining such property and to obtain the property for himself acted surreptitiously and the defendant Asche by reason of "unclean hands" is barred; that defendant Asche knew plaintiff Crouch claimed

ownership, and that Asche assumed risk in obtaining possession and his damages were his own.

The C. & D. Used Truck Parts intervened asking for the equipment it had purchased from Asche or the return of the $800 it had paid therefor with interest.

Following a pretrial conference, at which time the facts heretofore mentioned were stipulated, both the plaintiff Crouch and the Purex Corporation moved for summary judgment.

The trial court decreed that no contract came into existence between plaintiff Crouch and the Purex Corporation; that Asche had purchased the building and equipment and sold the building to Marrs. The title to the building was quieted in Marrs and plaintiff's check from Purex returning the $500 was impounded for payment of costs. Marrs' claim against plaintiff for removing part of the roof and siding from the building was reserved for future determination.

Appellant contends that on the basis of the prior negotiations the acceptance and endorsing appellant's check by the Purex Corporation constituted the formation of a contract of sale.

The appellees contend that the appellant's check was cashed through inadvertence or an error in office procedure and under such circumstances the cashing of the check did not constitute an acceptance of appellant's offer. The difficulty with this contention is that there was no evidence of any character as to why the check was cashed. Neither would the error void the contract unless mutual mistake was pleaded. (*Fontron v. Kruse*, 103 Kan. 32, 172 Pac. 1007.)

The appellant suggests that the statement in the letter of May 6, 1964, to the effect "we have received and accepted an offer from another party prior to receipt of yours" was a "falsehood" as Asche's acceptance was dated one day after appellant's check was in the Los Angeles Clearing House. We need not speculate as to the binding effect of Purex Corporation's offer to Asche. The question is whether the endorsing and depositing appellant's check constituted an acceptance of his offer to buy? We think it did.

Appellants, while contending that the endorsing and depositing the check constituted an acceptance of the offer to purchase, states:

"Counsel for Crouch has made a most exhaustive search for absolute authority to the effect that when a person accepts and cashes the check of an offeror, the act of cashing constitutes an acceptance and creates a contract. In all sincerity, we have been unable to find the 'bay horse' case in any jurisdic-

tion—in all probability because it is such a basic and elementary premise that the acceptance of consideration would certainly give rise to a sale of goods and a bilateral contract, and such cases have never reached a reporting stage."

The appellant is confusing the endorsing and depositing the check with acceptance of consideration or payment. The depositing of a check accompanying an offer to purchase is not necessarily acceptance of payment. The giving of a check which does not clear is no payment. (*Harbert v. Fort Smith Canning Co.*, 134 Kan. 240, 5 P. 2d 849.)

The endorsing and depositing a check constitutes an acceptance of the offer to buy which accompanies it because the act itself indicates acceptance. An offer may be accepted by performing a specified act as well as by an affirmative answer. (*Gunnison v. Evans*, 136 Kan. 791, 18 P. 2d 191.) Also, where the offeree exercised dominion over the thing offered him—in this instance the check—such exercise constitutes an acceptance of the offer. The rule is well stated in *Autographic Register Co. v. Philip Hano Co.*, 198 F. 2d 208, where it was said:

". . . However, a finding of positive intention to accept an offer is not always necessary to the creation of a contract. It is elementary that an offer may be accepted by performing or refraining from performing a specified act as well as by an affirmative answer, and it is stated in Am. Law Inst., Restatement, Contracts, §72 (2) as the general rule that 'Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance.' See also 1 Williston, Contracts, (Rev. Ed.) §§91, 91D. . . ." (p. 212.)

The general rule is stated in Restatement of Contracts, §§72 and 17 Am. Jur. 2d, Contracts, §47, p. 387, and followed in *Landon v. Northern Natural Gas Company*, 338 F. 2d 17, where the United States Court of Appeals, Tenth Circuit, held that refund letters together with acceptance and endorsement of the gas payment checks constituted a refund contract.

We are forced to conclude that the acceptance and endorsement of the check accompanying the offer to purchase the property in controversy constituted an acceptance of the offer.

The judgment is reversed with instructions to the district court to quiet plaintiff's title to the building and equipment in controversy against the defendants and enjoin them from interfering with plaintiff's ingress and egress for the purpose of salvaging the property.

APPROVED BY THE COURT.