**Barbara BARNETT, Plaintiff,**

v.

**LIFE INSURANCE INVESTORS COMPANY OF AMERICA, Defendant.**

**No. 02–1464–WEB.**

United States District Court, D. Kansas.

Oct. 21, 2003.

Burck Bailey, Fellers Snider Blankenship Bailey & Tippens–Oklahoma City, Oklahoma City, OK, Todd A. Nelson, Fellers Snider Blankenship Bailey & Tippens PC–Tulsa, Tulsa, OK, for Plaintiff.

Craig S. O'Dear, Lynn S. McCreary, Juliet A. Cox, Bryan Cave LLP–Kansas City, Kansas City, MO, Edward D. Greim, Bryan Cave LLP—NY, New York, NY, for Defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, Senior District Judge.

Now before the Court in this diversity action are the parties' cross motions for summary judgment.

## I. FACTS

For purposes of summary judgment, the Court finds that the following facts are uncontroverted. Plaintiff Barbara Barnett (Barbara) is the primary beneficiary of a life insurance policy (Policy) underwritten by Defendant Life Insurance Investors Company of America (Life Investors) for Barbara's late husband Charles Barnett (Charles). The Policy provided term coverage from its date of issue, October 6, 2000, until its date of expiry, October 6, 2048. Charles signed as the sole owner of the Policy, but the initial monthly premium was paid by a check signed by Barbara and drawn on a checking account held jointly by Charles and Barbara. Barbara also signed the form allowing Life Investors to obtain the subsequent monthly premiums of $62.52 by automatic withdrawals from another account held jointly by Charles and Barbara. Life Investors internal records designated Charles as the sole insured and Barbara as the signor for purposes of billing. Life Investors regularly withdrew the monthly premiums from the joint account on or about the sixth day of each month.

The Policy states that it is a legal contract between the owner and Life Investors. It provides that "[n]o agent or other person except or President, a Vice President, or our Secretary or Assistant Secretary has authority to bind us ... or to agree to change this policy," and that "[a]ny such change must be in writing." Defendant's Exhibit A, at 6. The Policy states that, "[a]ny unearned premiums will be refunded to the policyowner upon cancellation of this policy," and that "[t]here shall be no other premium refund except as required by law." Id, at 7. The Policy also has two riders. The first rider, which waives premium payments upon disability, states, "[y]ou may cancel these provisions by sending us written notice at our Administrative Office", and that "[i]f these provisions are canceled, the premium for the policy will be reduced by the amount of premium for this Benefit." Id, at 12. The second rider, which provides accelerated benefits upon terminal illness, states, "[t]his benefit ends on the first of: a) the termination of the Policy to which it is attached; or b) receipt of the Policyowner's written request for termination of this Benefit, provided there is no outstanding Accelerated Benefit." Id., at 14. Other than these provisions, the Policy gave no rights to either party to surrender or cancel the Policy unilaterally.

In late November 2001, Charles and Barbara were attempting to reduce their regular expenses due to financial pressures. Charles met with Diana Farr (Farr), a local agent of Life Investors, to reduce the premiums on the insurance policies Charles and Barbara held. Defendant has submitted an affidavit from Farr regarding a number of communications with Charles, many of which Plaintiff object to as hearsay, but it is uncontroverted from the Plaintiff's own testimony that she and Charles were surprised some time later when their monthly insurance premiums had not been reduced as they expected. Further communications with Farr ensued, and on January 15 or 16, 2002, Farr faxed a "Customer Service Value Form" (Form) to Charles. The Form is captioned with Life Investor's name and home office address, but the record does not otherwise show the origin or authorship of the Form.

The Form has a number of options regarding insurance coverage which could be checked or filled in as needed. One option was entitled "Surrender," with two choices under the heading: "[r]equest termination of policy/certificate (return policy contract with this form)," and "[r]equest termination I have lost my policy/certificate." Plaintiff's Exhibit 1, at 2. Neither of these

choices was checked, however, and nothing before the Court shows that Charles returned the Policy to Life Investors or had lost the Policy previously.

Instead, before the Form was faxed to Charles, Farr wrote under an option entitled, "[a]dditional changes or special instructions," the instructions, "[p]lease cancel Policy effective 11–30–2001." *Id.* Farr also wrote "12–01–01", as the date next to Charles' signature line. *Id.* When Charles received the Form, he signed it, filled in his social security number and date of birth, and faxed it back to Farr. Farr then faxed the Form to Life Investors.

Life Investors received the Form on January 16, 2002. In a letter to Charles dated January 22, 2002 (Letter), a Life Investors customer service employee wrote, "[a]s requested, protection provided by this policy has been discontinued effective December 6, 2001." Defendant's Exhibit G, at 1. Life Investors practice is to cancel only on policy issue dates, in this case the sixth of the month. The Letter also stated, "[e]nclosed is a check for $122.70, representing a refund of premium." *Id.* The Letter did not discuss the derivation of the refund amount, and the record, beyond establishing that Life Investors' computer calculated the amount, does not show how it was derived. An internal e-mail by a Life Investors employee records her opinion that the computer calculated the refund by days, not in discrete monthly increments, and this same employee later testified that she mistakenly failed to compare the computer-generated refund amount with the actual monthly premiums. In any event, the check was made payable to Charles, and both it and the Letter were mailed to Charles on January 23, 2002.

Charles died on January 26, 2002, which was a Saturday. The letter was not delivered until after Charles' death. Neither the check accompanying the Letter, nor a subsequent one made payable to Charles's estate, were negotiated.

## II. LEGAL STANDARDS

### A. *Procedural*

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court must examine the factual record and draw reasonable inferences in the light most favorable to the nonmoving party. *See Simms v. Okla. ex rel. Dept. of Mental Health,* 165 F.3d 1321, 1326 (10th Cir. 1999), *cert. denied* 528 U.S. 815, 120 S.Ct. 53, 145 L.Ed.2d 46 (1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Ind. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538, 552 (1986). On cross motions for summary judgment, the Court may assume that no evidence need be considered other than that supplied by the parties, but summary judgment remains inappropriate if disputes as to material facts exist. *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.,* 132 F.3d 1316, 1319 (10th Cir.1997).

### B. *Substantive*

The parties do not contest that Kansas law applies. *See State Farm Mut. Auto. Ins. Co. v. Blystra,* 86 F.3d 1007, 1010 (10th Cir.1996). The terms of an insurance policy, like any contract, must be considered as a whole and, if possible, be construed to give effect to the intention of the parties. *O'Bryan v. Columbia Ins. Group,* 274 Kan. 572, 56 P.3d 789, 792 (2002). If an insurance policy is ambiguous, it is given the construction most favor-

able to the insured. *Schartz v. Kansas Health Ins. Ass'n*, 275 Kan. 515, 66 P.3d 866, 869 (2003).

 Where a right to cancel unilaterally is not set out in the policy or otherwise provided for by law, the parties may cancel only by mutual consent. *See Markel v. Travelers Ins. Co.*, 510 F.2d 1202, 1207 (10th Cir.1975); *Shunga Plaza, Inc. v. American Employers' Ins. Co.*, 204 Kan. 790, 465 P.2d 987, 995 (1970)(dissenting opinion, adopted as opinion of the court upon rehearing at 206 Kan. 16, 476 P.2d 642, 643 (1970)); *Riddle v. Rankin*, 146 Kan. 316, 69 P.2d 722, 726 (1937); *Bennett v. Colonial Life and Acc. Ins. Co.*, 7 Kan. App.2d 441, 443, 643 P.2d 1133 (1982); 2 Couch on Insurance 3d, § 31:58; 45 C.J.S. Insurance, § 507; 43 Am.Jur.2d Insurance, § 444. "The burden of proof that an insurance policy has been cancelled lies upon the insurer alleging it, no matter what method of cancellation is relied upon." *Shunga Plaza, Inc.*, 465 P.2d at 994 (dissenting opinion, adopted as opinion of the court upon rehearing at 476 P.2d at 643).

## III. DISCUSSION

 Although the Policy contemplates the possibility of cancellation, it provides no method by which it might be effected. This case, therefore, is distinguishable from cases in which the policy has such a provision. *See, e.g., LaDow v. New England Mut. Life Ins. Co.*, 727 F.Supp. 1399, 1401 (D.Kan.1989) (a policy which stated it could be canceled, "at any time by notice to the Company in writing" created a "continuous and irrevocable offer of surrender . . . .").

The Policy's riders did have cancellation language, but the Court will not read these provisions into the Policy as a whole. The first rider stated that Charles' premiums would be reduced by cancellation of the rider, meaning it was severable from the Policy itself. The second rider specified that it would remain in force until either the Policy was terminated or the owner made a written request to terminate the benefit. In other words, the termination of the Policy would terminate the benefit, not the other way around, and the written request specifically related to the rider, not to the Policy itself.

The Court must also consider whether the Form should be read together with the Policy to provide a means of cancellation. Although it is uncontroverted that the Form was provided to Charles and was captioned as described in the Court's findings of fact, it was not attached to the Policy, it was not referenced in the Policy, and nothing shows that the parties considered it when they agreed to the Policy. The Policy also stated that, "[t]his policy and the application, a copy of which is attached, make up the entire contract." Defendant's Exhibit A, at 6. The Form, therefore, was not part of the Policy.

Given that the Policy did not provide a means for unilateral cancellation, the Court next examines whether such a right was provided by applicable law. The parties' arguments center on two statutes, K.S.A. §§ 40–453 and 40–3118(b). K.S.A. § 40–453 was enacted along with K.S.A. § 40–452 to define the insurable interest an employer has in the lives of employees under group policies. *See* 1993 Kan. Sess. Laws ch. 190. K.S.A. § 40–3118(b) only applies to motor vehicle liability insurance policies. The fundamental rule of statutory construction under Kansas law is to give effect to the intent of the legislature rather than add something not readily found in the statute. *See State v. Dickson*, 275 Kan. 683, 69 P.3d 549, 556 (2003). Because K.S.A. §§ 40–453 and 40–3118(b) do not deal with the cancellation of individual life insurance policies, they do not apply in this case.

■ The Court, therefore, must consider whether the parties cancelled the Policy through mutual consent and, if so, when. Under Kansas law, there must be a meeting of the minds to form a bilateral agreement to cancel an insurance policy. *Shunga Plaza, Inc.*, 465 P.2d at 995 (dissenting opinion, adopted as opinion of the court upon rehearing at 206 Kan. 16, 476 P.2d 642); *Riddle*, 69 P.2d at 726. "To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent. (*Riddle v. Rankin*, supra.) The evidence must show reasonable definiteness that the minds of the parties met upon the subject matter and agreed upon its terms." *Shunga Plaza, Inc.*, 465 P.2d at 995 (dissenting opinion, adopted as opinion of the court upon rehearing at 206 Kan. 16, 476 P.2d 642).

The Form shows that Charles wished to cancel the Policy, but his intent was not to cancel as of January 16, 2002, when Life Investors received the Form. Instead of checking one of the "surrender" options, he requested that the Policy be cancelled retroactively to November 30, 2001.[1] This was critical because only *unearned* premiums could be refunded under the Policy.[2] If the cancellation were retroactive, however, previously earned premiums could be deemed unearned and thus refunded.[3]

Life Investors made the retroactive cancellation, but Plaintiff now contends that this was actually a counteroffer, not an acceptance of Charles' offer. Plaintiff maintains that Life Investors failed to perform by refunding too little and by cancelling as of December 6, 2001, not November 30, 2001. Because Charles died before he reconsidered the counteroffer, Plaintiff argues, there was no mutual consent to cancel the Policy at the time of Charles' death.

The Court, considering the facts and reasonable inferences in the light most favorable to Plaintiff, holds that a rational jury could not find as Plaintiff suggests. The evidence does not show that Charles conditioned his offer on a refund in a certain amount. The Form is silent as to the amount, and the Plaintiff, even after full discovery, does not specify the amount for the Court. Certainly the Form, together with the surrounding facts, shows that Charles' intent was to reduce the insurance premiums after late November 2001, but even if Charles had expected a total refund of the $125.04 in Policy premiums for December 2001 and January 2002, the actual refund of $122.70 was within $2.34 of this amount.

There is also no reason to conclude that Life Investor's practice of cancelling on the policy issue date was contrary to Charles' offer. Plaintiff contends that a cancellation date of November 30, 2001, would have yielded a greater refund than December 6, 2001, but once again Plaintiff cannot specify the difference. Even if Life Investors made a mistake in the calculation, the mistake did not destroy the validi-

1. Although the instruction to cancel retroactively, along with the signature date, were written by Farr, Plaintiff does not suggest that Farr was acting without authorization from Charles or contrary to his wishes, or that Charles did not understand the Form before he signed it. *See* Plaintiff's Brief in Support of Motion for Summary Judgment, at 3.

2. This term of the Policy remained in force. The record does not show that Life Investor's President, Vice President, Secretary, or Assistant Secretary ever agreed in writing to refund *earned* premiums.

3. The Court is aware of Defendant's statement in the Pretrial Order that it refunded the *earned* premiums to accommodate Charles' request. The Court notes that Defendant placed the word earned in quotation marks, and in context the usage was to designate premiums for coverage before January 15, 2003, as opposed to premiums for coverage after that date.

ty of the acceptance. Not only is any possible discrepancy between the offer and the acceptance minor, but Charles effectively left the refund calculation to Life Investors, and the Court finds that it substantially performed.

■ Kansas law recognizes and applies the rule of substantial performance in contract disputes. *Howarth v. Olivier*, 30 Kan.App.2d 961, 52 P.3d 911, 912 Syl. ¶ 4 (2002). Substantial performance is shown when "(1) the party made an honest endeavor in good faith to perform its part of the contract; (2) the results of the endeavor are beneficial to the other party; and (3) such benefits are retained by the other party." *Id,* (citing *Almena State Bank v. Enfield,* 24 Kan.App.2d 834, 954 P.2d 724, 727 (1998), quoting *VRT, Inc. v. Dutton–Lainson Co.,* 247 Neb. 845, 530 N.W.2d 619, 623 (1995)).

■ The uncontroverted evidence shows that Life Investors honestly and in good faith endeavored to cancel the Policy retroactively and refund the now "unearned" premiums. Regarding the second factor, although the cancellation had such unfortunate consequences for Plaintiff, Charles was seeking a reduction in the premiums, and this benefit resulted from the cancellation. Regarding the third factor, although the refund checks have not been negotiated, a party may not convert substantial performance into a material breach simply by rejecting the performance. *See Federal Land Bank v. Krug,* 253 Kan. 307, 856 P.2d 111, 115 (1993) (a failure to perform must be so substantial as to defeat the object of the parties in making the agreement). Because, as the third factor recognizes, a party should not be allowed to retain benefits due to nonmaterial defects in the performance, the general rule is that a substantially performing party may recover the contract price less any damage sustained by the other party for minor defects in the per-

formance. *See* PIK–Civil 3rd, 124.20 (citing *Almena State Bank,* 24 Kan.App.2d 834, 954 P.2d 724, Syl. ¶ 4).

The undisputed material facts show a reasonable definiteness that the minds of the parties met upon the subject matter and agreed to the terms, and that a rational jury could not find that Life Investors' materially breached its part of the bargain. *See Almena State Bank,* 954 P.2d at 727 (substantial performance is "the antithesis of material breach.").

This leaves the fact that the Letter and check did not arrive until after Charles' death. In arguing that the cancellation was not effective, Plaintiff relies on language in *Shunga* to the effect that an insured must receive notice of a cancellation before it takes effect. An examination of the dissenting opinion in that case, and the order later adopting the dissenting opinion as the opinion of the court, shows that the result in *Shunga* was based on a representation from an insurance agent that the insurance company must first approve the modification of coverage requested by the insured, and that "[a] check for the return premium will be sent to you when we receive confirmation from company." *See* 206 Kan. at 17–18, 476 P.2d 642, 204 Kan. at 797–98, 465 P.2d 987. Therefore, the *Shunga* court found, "[t]he undisputed testimony shows that [the insured] expected something more—some further notice—before the policy was cancelled . . . ." 204 Kan. at 798, 465 P.2d 987. There was so such evidence in this case.

Plaintiff also points to PIK–Civil 3d 124.35, which states in part, "[a] notice of cancellation must be received by a policyholder in order to be effective." The comment to this instruction cites authorities such as K.S.A. § 40–3118(b), *Feldt v. Union Ins. Co.,* 240 Kan. 108, 726 P.2d 1341 (1986), and *Ogden v. Continental Casualty Co.,* 208 Kan. 806, 494 P.2d 1169 (1972),

which deal with notice of unilateral cancellation by insurers, not the formation of mutual consent by acceptance of an insured's offer to cancel.

Generally speaking, "[i]t was long ago decided that the contract was completed upon the mailing of the acceptance . . . ." 2 Williston on Contracts, § 6:32 (4th ed.1991). The result is even more clear here because the mailing of the Letter and the refund check concluded the performance requested by Charles. Under Kansas law, "an offer may be accepted by performing a specified act . . ." *Crouch v. Marrs,* 199 Kan. 387, 430 P.2d 204, 209 (1967). In *Crouch,* an offer to buy was accepted by endorsing and depositing a check, "because the act itself indicates acceptance." *Id.* In this case, similarly, Life Investors indicated its acceptance as a matter of law by cancelling the Policy retroactively, preparing a refund check, and mailing the notice of retroactive cancellation and the check to Charles on January 23, 2001. The Policy, therefore, was not in effect on January 26,2001, when Charles unexpectedly passed away.

Finally, Plaintiff argues that a provision on the Form relating to community property may apply here because Charles and Barbara "lived" in Nevada for a week while they were on their honeymoon. The suggestion is without merit and does not create a material fact for trial.

IT IS THEREFORE ORDERED that the motion for summary judgment by Defendant Life Investors Insurance Company of America (Doc. 23) is GRANTED; the motion for summary judgment by Plaintiff Barbara Barnett (Doc. 38) is DENIED.